UNITED STATES *v.* SMITH *et al.*

*(Circuit Court, E. D. Missouri.* June 4, 1888.)

1. INDIANS — INDIAN AGENTS — ACTION ON BOND — EVIDENCE — TRANSCRIPT OF TREASURY DEPARTMENT — PROPERTY RECEIVED — REV. ST. U. S. § 886.

In an action on the bond of a special Indian agent, a treasury transcript containing a charge "for government property received at the W. agency, and not properly accounted for." but not showing of what the property consisted, nor how the value was ascertained. is insufficient to warrant a judgment for the value of such property, and is not aided by a paper attached thereto describing the property by items, apparently compiled from the original returns and other documents on file; such paper not being admissible under Rev. St. U. S. § 886, providing for the admission in evidence of copies of books and papers in the treasury department.

2. SAME — RECEIPTS AND DISBURSEMENTS.

Under Rev. St. U. S. § 886, providing for the admission in evidence of copies of books and papers on file in the treasury department, a treasury transcript, certified as therein provided. is competent, in an action on the bond of a special Indian agent, to show what public moneys defendant received, and what disbursements made by him were approved.

3. SAME—AGENCY INSPECTOR—TRAVELING EXPENSES—REV. ST. U. S. 2079—ACT OF MARCH 3, 1875.

Under Rev. St. U. S. § 2079, allowing the actual expenses of persons who are required, under the title relating to Indians, to travel from one place to another, and the act of congress of March 3, 1875, such persons may be allowed their traveling expenses, including board while actually in transit, but not for board while engaged in inspecting a station.

Action on the official bond of A. R. Smith as special Indian agent.

Sections 886 and 2077, Rev. St. U. S., referred to in the opinion, are as follows:

Sec. 886. "When suit is brought, in any case of delinquency of a revenue officer, or other person accountable for public money, a transcript from the books and proceedings of the treasury department, certified by the register, and authenticated under the seal of the department, or, when the suit involves the accounts of the war or navy departments, certified by the auditors respectively charged with the examination of those accounts, and authenticated under the seal of the treasury department, shall be admitted as evidence, and the court trying the cause shall be authorized to grant judgment, and award execution accordingly. And all copies of bonds, contracts, or other papers relating to or connected with the settlement of any account between the United States and an individual, when certified by the register, or by such auditor, as the case may be, to be true copies of the originals on file, and authenticated under the seal of the department, may be annexed to such transcripts, and shall have equal validity, and be entitled to the same degree of credit, which would be due to the original papers if produced and authenticated in court."

Sec. 2077. "Where persons are required, in the performance of their duties, under this title, ['Indians,'] to travel from one place to another, their actual expenses, or a reasonable sum in lieu thereof, may be allowed them, except that no allowance shall be made to any person for travel or expenses in coming to the seat of government to settle his accounts, unless thereto required by the secretary of the interior."

*Thomas P. Bashaw,* U. S. Dist. Atty., for the United States.
*C. H. Krum* and *C. M. Napton,* for defendants.

THAYER, J. This is an action on a bond given by the defendants to secure the faithful performance by A. R. Smith of his duties as special Indian agent under an appointment made in October, 1881. The breaches assigned are that Smith failed to account for $497.15 of public moneys intrusted to him for disbursement, and that he failed to account for public property that came into his possession of the value of $1,777.03. The testimony on the part of the government is contained in a treasury transcript certified by the register and secretary of the treasury pursuant to section 886 of the Revised Statutes of the United States. Among the various papers forming the transcript is a statement purporting to be a copy of Smith's "consolidated account" as borne on the books of the treasury department. On the debit side of the account, he is charged with the sum of $1,777.03 "for government property received at the Western Shoshone agency, and not properly accounted for." The transcript of the "consolidated account" does not show of what the property consisted, nor the manner in which the value of same was ascertained. Attached to the transcript is another paper, however,

which professes to describe the property item by item, and also states the value of the various articles, but it does not show in what way the values given were ascertained. Respecting this latter paper, it should also be said that it does not profess to be a transcript from any book kept, or a copy of any document on file, in the treasury department. It was probably compiled from original returns made by Smith of public property in his possession, which are now on file in the department, and professes to show what portion of such property has not been accounted for by proper vouchers. Neither the original property returns as made by Smith and accompanying vouchers, or copies of the same, are attached to the treasury transcript, or have been offered in evidence. On this state of facts, it must be held that the proof is insufficient to warrant a judgment against the principal in the bond, and his sureties, for the value of any public property intrusted to his care. It may be conceded that, by virtue of section 886, a transcript from the books of the treasury department, showing the officer's receipts and disbursements of public money, would be sufficient to warrant a judgment against him for any balance shown by such account to be due the government. *U. S.* v. *Buford,* 3 Pet. 29; *Cox* v. *U. S.,* 6 Pet. 202. But a transcript from a book which merely shows a charge in gross against an officer for the value of public property, without describing the property, or the method of valuation, or the manner in which it came to his hands, or the disposition made of the same, is of no value even under section 886. *U. S.* v. *Jones,* 8 Pet. 375. If the treasury transcript contained copies of the agent's property returns, and copies of the vouchers accompanying the same, (all of which are made evidence, with like effect as the originals, by virtue of section 886,) it would be possible to verify the charge made against him in the consolidated account for property not properly accounted for; but as the government has failed to produce such original returns and vouchers, or receipts signed by the agent for property intrusted to him, or copies of any such papers duly certified by the register and secretary of the treasury, it must be held that there is no legitimate proof of a failure on the part of the agent to account for property in his custody. The case, in this respect, is not aided by the production of an itemized list of the property, compiled from original receipts, returns, or other documents on file in the department, as copies of such papers are not produced, and as there is no law making such a compilation admissible against the defendants in the absence of the original documents, or copies thereof duly authenticated. *U. S.* v. *Patterson,* Gilp. 47; *U. S.* v. *Jones, supra.*

The defendant's money transactions with the government stand on a different footing. The transcript is competent, under section 886, to show what public moneys the defendant received, and what disbursements made by him have been approved. Whatever balance appears to be in his hands after deducting such disbursements as have been allowed, he is chargeable with, unless he can show that he is legally entitled to other credits than have been allowed. The various sums disallowed amount to $497.15, leaving the defendant apparently indebted to

the government in that sum. Most of the disbursements claimed to have been made, which have been disallowed, were for board while the agent was examining the affairs of different Indian agencies. The treasury department appears to have allowed him all of his traveling expenses, including board while actually in transit from one station to another, but to have disallowed certain credits claimed for alleged disbursements on account of board after his arrival at his destination. On the other hand, the defendant contends with much plausibility that as he was a special agent, having no fixed place of duty, and was most of the time employed in inspecting various stations, that he is entitled to reimbursement for living expenses while inspecting stations as well as while traveling. The view taken by the accounting officers of the treasury department with respect to this point seems to be fortified by the provisions of a statute regulating the subject, and I accordingly concur in their view. *Vide* section 2077, Rev. St. U. S., and act March 3, 1875, (18 St. at Large, 452.) While concurring in the general view of the law in pursuance of which the account has been stated, I am of the opinion that, according to the testimony of the defendant Smith, he is entitled to credit for the following items of expense in his account for the fourth quarter of 1881, to-wit, $1.60 and $19.25, and to the following items in his account for the first quarter of 1883, to-wit, $24.80, $9, $19.20, and $2. Deducting these items, aggregating $55.85, the net balance due the United States is $441.30, for which judgment will be entered.